All right. Our third case for this morning is John Crane, Incorporated v. Shein Law Center and John Crane v. Simon Greenstone, Panettiere Bartlett. Mr. Ferguson. Good morning. May it please the court. Good morning. My name is Mark Ferguson and I represent the appellant and cross-appellee John Crane, Incorporated. John Crane's appeal in these cases raises the question whether an Illinois company that's the victim of a long-running, fraudulent scheme involving numerous false communications directed to John Crane in Illinois and causing injury in Illinois gives John Crane the right to seek redress in its home jurisdiction. Were they directed to John Crane in Illinois or were these various communications directed to John Crane in the various jurisdictions where the litigation was pending, which I recall is basically Pennsylvania, California, and Texas? Different types of communications give rise to different answers to that question. Some of them were communications that were served on local counsel in the various individual cases. They're designed for use in the litigation. So there's a case pending in Pennsylvania, for example. Maybe the answer to an interrogatory or documents or what have you, they're transmitted through a lawyer, whether it's local counsel in Philadelphia or whether it's counsel here or counsel in Texas or anywhere else. Does that really matter if it's a response to something that the Pennsylvania court is handling? Well, in a case like this where the essence of the claim is that John Crane has been defrauded, had received communications in its home state where its decision-makers are, has relied on those statements in the process of coordinating and considering what to do in this broad set of asbestos litigation where its own National Coordinating Council also resides in Illinois. The communication that starts with a chain that begins with local counsel, who is not the decision-maker in these cases. The decision-maker is National Coordinating Council and management itself, including in-house legal management. That means that that communication is, in fact, communication to Illinois. It's relied upon in Illinois in a number of different ways. And the result is even that one, even that one that is delivered first to John Crane's agent elsewhere, is a communication knowingly intended to reach John Crane in Illinois. So any wrongful acts in litigation then would be a basis for personal jurisdiction in the target's home? No, I would say that's not correct. And that's the differentiation that I think really goes to the heart of this case. The malpractice cases, for example. Talking about intentional torts. Okay. Take Wallace. Take Wallace is a good example of where we've got malicious prosecution. That tort, all of the elements of that tort took place in California. There was communication that went back and forth. But nothing about the communication gave rise to the cause of action. It was the wrongful prosecution, the malicious prosecution in California that was the entire essence of the tort. And their response would be the entire fraud took place in Philadelphia. Well, my response to that, Your Honor, would be no. What happened was that communications were made in Pennsylvania. There may well have been a fraud on the court there that was complete in Pennsylvania. You think there was? I absolutely do. Right. Yes, sir. But I also think that. But could I ask, I mean, just to go back to Wallace for a second, I mean, I guess I'm not completely satisfied with your answer to Judge Hamilton because even if all of these events were happening in California, if the motivation for the tort, so to speak, is to extract money from the defendant, then I don't know why that's not an argument for personal jurisdiction at the principal place of business of the defendant in any case. I mean, the point is, I mean, you're analogizing it to a robber, you know, who ties a mask on and goes into your headquarters in Illinois and steals money from you through this RICO arrangement that you allege. But that would be a tremendous expansion of specific personal jurisdiction if that were the case. I think it would not be an expansion at all, and I liken this case to the felon versus Clifton case in which we had a dispute that arose out of a contract entered into in Arizona that related to real estate in Mexico, but fraudulent communications were sent to Wisconsin, and those communications were relied upon in Wisconsin, which gave rise to personal jurisdiction in Wisconsin. But the reliance was a little different, wasn't it, from the reliance? I mean, of course, you know, in the course of litigation, you get answers to interrogatories. The system works only because you have some ability to rely on the candor and truthfulness of the person answering the interrogatories. But it still seems to me that the court in these three states, depending on which proceeding you're talking about, is the place that is immediately injured and that you are sort of second or third ring out. Well, I would say that there are different sets of injuries, and that's an important part of our claim here. We have, on the one hand, there is an injury from a judgment that we would say was fraudulently obtained. That's over here on the one side. And that's the most obvious one when you think of a court having been defrauded. But under Mains against Citibank, to jump to the other issue, you have a problem. If your injury is from a fraudulent judgment, then you go and use whatever the local jurisdiction's equivalent of Rule 60B is. Of course, and I want to actually put that to the side because I want to talk about the others. The others are things like increased litigation expense, where John Crane decided to go out and try to independently prove other exposures to these other asbestos products, whose actual exposure was concealed from John Crane. The loss of contribution claims that John Crane would have had had it known about the fact that these other exposures existed and could have gotten through bankruptcy trust but was deprived of. Why is that? Is there some reason why that avenue is not available to you right now? The bankruptcy trust is shut down or there's a time limit or something? Well, I don't know the answer of whether there's a statute of limitations, but I will say that in these cases, the plaintiffs, the underlying plaintiffs, have claimed to the bankruptcy trust and been paid, and that may itself create some sort of bar. But in any case, that is a loss that John Crane has suffered, and it's unrelated to the fact that the judgment was also tainted. And the same is true with respect to the way when you see these cases have higher and higher verdicts, you end up valuing them more highly and then over time settling them more highly. This was a pervasive scheme over a long period of time, and that's the injury that's independent of these judgments. I've got to say, Mr. Ferguson, you're saying it's independent, but I really have trouble with that. These all seem to be direct consequences of the alleged fraud to inflate verdicts and to provoke higher settlements. Well, I think it is exactly a direct consequence of the fraud, the fraud being directed to John Crane, and John Crane saying, hey, we don't see that there's any evidence of other exposures, so we've got to develop it on our own. We're relying on the fact that that's what we've been told. We're relying on the fact that we haven't been told of these other things. We don't submit bankruptcy claims for contribution. The essence of the injury is that John Crane has taken steps or not taken steps because of the fraud that has been perpetrated, and John Crane made those decisions having received that information or lack of information in Illinois. That's why we contend that these are. Can I go back to Chief Judge Wood's original question about which communications were directed where? Yes. Do you assert any communications directly from these defendants to your clients in Wisconsin, directly? I'm sorry, in Illinois. Directly to our. There were some communications between some of them and our clients. But the principal ones that we've really focused on are their local counsel. The discovery responses. Pardon me? The discovery responses. Yes, but also communications that, based on discovery in each of the cases, involve setting, for example, pretrial order parameters and that sort of thing, with our coordinating counsel here in Illinois as well. So that's, again, another direct availment. And then the final thing, of course, is the end point of the fraud was that they submitted claims to bankruptcy trusts themselves, which we believe rightfully should have been both disclosed in the litigation and that were then rightfully claims of John Crane. But they did that in part by registering with and then submitting claims through a claims processing facility here in Naperville, Illinois. So that's, again, part of the fraud and directed to Illinois. I'm sorry? The district court thought that the bankruptcy claims processing facility could have been located anywhere. There was nothing particularly Illinois-ish about it. I mean, I know it was in Illinois, but so what? A number of courts have said the fact that you don't care where the target of your fraud is doesn't matter. It doesn't mean that that's not jurisdictionally relevant. The defendants didn't purposely avail themselves of Illinois as a forum. Well, they certainly purposely went to, registered with, and then submitted claims to those bankruptcy trusts in Illinois. And that's part of your overarching RICO theories, I understand. Yes, it is. That's correct. Do the trusts have claims against, under your theory, have claims against the defendants? Theoretically, I believe they would. If we could talk about the Rooker-Feldman issue for a moment longer. I'll just say one of the things that I've wondered about is the prospect that in the case against Simon Greenstone, we might have a split result. As you've pointed out, it's a little hard to see how Rooker-Feldman applies to cases that you won in state court or won in a federal court. But we do have three, as I understand it, three of those cases are involving Simon Greenstone or similar to the ones against Schein where you lost verdicts in state court, right? That's true. Okay. So the cases below, the underlying cases, I should say, are the federal case that we won, several that have been settled without judgment at all, and several that have been lost. Can I ask a quick question about settlements here? I would have thought that documents settling these claims would have been documented in such a way as to foreclose any kind of claims about fraud by the underlying plaintiffs or their attorneys. I have been only this much in the world of asbestos litigation, and what I understand is it's not unusual for cases to be settled either following or with the pendency of a dismissal for want of prosecution, for example, or to be dismissed without prejudice. It happens, and that's what happened in some of these cases. Without releases, without? Well, with releases, but not with judgment having been entered. But I think you're misunderstanding the question. Was there a contractual release in the settlements of any future claims related to the topic of the litigation? I have not seen those myself, but I presume that there were, and I think to the extent, let's just say, for example, there was some sort of satisfaction in a court argument, then maybe those might govern, but that's not before the court now. We're not there yet. No, it's not, but I'm wondering what the point is. Okay. Your Honor, I had asked if there was some time. You should save the rest of your time, and we will move along. Do we have Mr. Breyer first? Yes, Your Honor. All right, Mr. Breyer. Good morning, and may it please the Court. My name is Dan Breyer, and I represent the Schein defendants in these consolidated appeals. So I have a question for you, Mr. Breyer. It's not common that litigation is seen as the problem itself, but it does happen in the antitrust area, for instance, in the North Pennington, you know, California motor transport area, and as I understand the RICO theory, the John Crane people think that there is, in fact, a RICO conspiracy that involves your clients and the other law firm, and that there are a number of predicate acts which are represented by different lawsuits. And I, of course, understand that your theory is wherever these cases are going to proceed, it shouldn't be in Illinois. But I don't understand why, from the RICO point of view, where essentially the point of the conspiracy is to shake down John Crane, why Illinois is not a proper venue and place for personal jurisdiction. And if it isn't, then I don't know why Pennsylvania would be either, for example, to the extent that some of the underlying litigations in Texas and California. I don't know how you bring the RICO action unless you can base personal jurisdiction on the, you know, the point of the RICO conspiracy. Your Honor, there is no alleged conspiracy between the Schein defendants and the Simon Greenstone defendants that are also appellees in this case. But there is an allegation that the Schein defendants individually and through their law firm are a RICO enterprise. Correct. So I'll leave Simon Greenstone off to one side. My question is identical, which is if it's a RICO enterprise and the whole point of this, I mean I'm not accusing you of being the mafia, of course, but if you were, if the whole point is to shake down, you know, and extort money out of this company, then why isn't the target just as though you had sent somebody into Illinois to steal valuable artwork from their headquarters? Well, that would be an Illinois-related conspiracy, an Illinois-related point of the RICO enterprise. So why doesn't the fact that RICO is in here change the way we should think about this? I don't believe it does, Your Honor, for the following reasons. RICO is, in effect, an intentional act. It's an intentional act according to the- Right. You have an enterprise and your enterprise is designed to, as I said, kind of get money out of people through the appropriate kind of predicate acts. We know that there's a lot of law in what the predicate acts can be, and I don't understand you to be arguing that malicious litigation, hypothetically, of course, I'm not asking you to admit that, but the malicious litigation couldn't be a RICO predicate act. No, I'm not arguing that. So you agree it could be? What I'm saying is the focal point of the alleged enterprise, the focal point of the alleged RICO conspiracy as it relates to the Shine defendants, was in Philadelphia County, Pennsylvania. But I'm asking you why, because as this litigation as a whole tells us, the location of any given lawsuit is a fortuity itself. It wouldn't be a different lawsuit if one had been in Philadelphia and one had been in New York and one had been in Miami. It would still be the same lawsuit. Your predicate acts are the malicious litigation. Your Honor, the sole link to this forum is JCI. JCI links Shine and this forum. No, I understand that, but their allegation is that you are trying to extract money from them. I mean, presumably their money is where they are, and many things could be said about that, but that's their theory, as I understand it. The reason they filed their protective action after Judge Tharp ruled in the lower court in the Eastern District of Pennsylvania, where it resides today, is because they know that Shine and the Shine defendants never directed anything directly to JCI. Well, I'm not going to draw a negative inference. I mean, they obviously didn't want to blow a statute of limitations or something. So actually I was going to ask somebody, that case is sitting there in the docket in the Eastern District of Pennsylvania at this point? It stayed pending this court's ruling. So, Your Honor, the point, though... But I don't think you're answering my question. In your view, there is no circumstance in which an enterprise devoted to the goal of unlawfully extracting money from somebody who's located in a particular state here, Illinois, could be said to have minimum contacts with the place where the victim is. This is a long way from Walden against Fiore, I will say. The only way they could do it, Your Honor, is if the defendants directed tortious... Right, and the tortious conduct that they're directing is their scheme to extract money unlawfully. But that's a result that follows from...  No, but there's no... Schein himself, or the Schein Law Firm, or the Simon Greenstone Law Firms, had to direct tortious conduct at the forum. Not at JCI, but at the forum. Well, but you're drawing that distinction... Again, I'm trying to get back to a simple case. If the Schein Law Firm wanted to hack into somebody's bank account who's an Illinois resident, and so they figure out the address and they hack into that bank account and they take the money, then the fact that they're sitting in Philadelphia when they do it doesn't mean that they have not committed a tort in Illinois. That would be different. If they hacked into somebody's bank account in Illinois, they would be tortiously directing something at the forum. Correct, and as I understand the theory, which in many ways has other weaknesses that we've been talking about, but as I understand the theory, that's what JCI says you've been doing. They say, from your base in Philadelphia, you have figured out a way to get money from them by dissembling in these... Well, but it's not directed... JCI was one of 30 defendants in the underlying Gallini case, one of 36 defendants. So there was nothing... And in fact, it's the only Illinois defendant. So in this litigation in Philadelphia County, the process that occurs there, all of the discovery was there, all of the depositions, the court sat there, the verdicts were there, the jury was there, and if JCI was harmed, as they've alleged, they were harmed because of conduct directed at JCI in Philadelphia, and it's not directed, there is not a single... I thought they alleged, though, that they are, in fact, never mind, they don't care about these other defendants, but I thought they alleged that because they manufactured products with a certain form of asbestos and they're still solvent, that there was actually some targeting on the Shine law firm's part against them and perhaps against other companies such as them, but it's against them because they're solvent and there's a greater chance of larger recoveries. The allegation is that they targeted solvent defendants. JCI was one of 30 alleged solvent defendants in the underlying case. Right, but they each might have these claims. I don't think JCI cares if other people bring similar lawsuits. Only if, under the case law, Judge, I would respectfully submit, that's true only if the defendants targeted their tortious conduct at this forum and there's not anything in the record that they did. Everything in this record is a daisy chain. Alleged fraudulent discovery served on Philadelphia council in the cases. That goes to JCI's coordinating national council, which by total fortuity ends up being in Illinois. Shine has nothing to do with selecting where JCI's national... But you knew where JCI was located. You know where it's headquarters. I mean, you could look it up on the Internet. But he didn't communicate with JCI. Even under their theory, communication went from Shine to Philadelphia council. But you didn't want to stop with the council. You wanted money from the company. But Shine never dealt with JCI in Illinois. That's why the claim fails here. Unlike the other cases where jurisdiction was found, there was communication directly with the other party. But here it was with their council in Philadelphia. All right, I think we have that point. I'm going to ask you to wrap up and turn it over to your co-counsel. Thank you. Thank you. Mr. Magner. Good morning, Your Honor. I'm Mike Magner, and I represent the Simon Greenstone parties. One thing that was just said a moment ago was that the forum, the underlying forum was a fortuity, and I don't think that that's correct. For example, Plaintiff David Kellerman was injured and was suffering from a fatal cancer-related or asbestos-related cancer, and he chose to file suit in state court in Los Angeles. He had been exposed in the Navy. That included time in. No, I understand that from that point of view, there was a reason for each of these forums. But from the point of view of the alleged RICO conspiracy, the different pieces of underlying litigation could have been anywhere. Unfortunately, there are probably asbestos victims in all 50 states, and so there could be, you know, your clients or other people. But the RICO conspiracy is this set of strategies in the context of that more money than an honest litigation process would have extracted from JCI. That's my understanding. I understand. So in that sense, it's fortuitous. It wouldn't have mattered. If you had sued on behalf of a Florida victim in Miami, it would be the same situation. Yes, Your Honor. There's very little I can say on personal jurisdiction that was not covered by Judge St. Eve probably better and more succinctly than I could. So I will rely on Judge St. Eve's opinion. What I'd like to do is focus on Rooker-Feldman. All right. So for Rooker-Feldman, as Judge Hamilton has already suggested, there may be some aspects of this case that are barred by Rooker-Feldman to the extent that JCI is a state court loser and certain kinds of relief, such as perhaps recovering the difference between the inflated damages and the actual damages. I can certainly see that that's Rooker-Feldman barred. I can't see how there's a Rooker-Feldman bar for cases they won, and I really am skeptical that there's a Rooker-Feldman bar for the bankruptcy trust transactions because, as they repeatedly say in their briefs, we accept the state court's judgment as a given. We are not trying to change it in any way. And under Saudi basic industries, it seems to me that takes Rooker-Feldman off the table. I disagree, Your Honor. For those parts of the case. Because this really is no different than the Mainz case for a host of reasons. But Mainz had only one form of relief. I mean, we remember Mainz, and to the extent it's saying that this judgment was tainted because there was fraud, you're exactly right. I think Mainz, same situation. But Mainz did not involve lawsuits that the plaintiff won. Mainz did not involve any situation where the plaintiff was willing to say, I accept the state court judgment as a datum for the next step. And those are the ones I am focusing on here. Yes, I understand. With regard to the case where John Crane won, that's the Hill case, and that was in federal court. We believe that their sole relief is through Rule 60, and they have not pursued that. But it's not a Rooker-Feldman problem. There's no subject matter jurisdiction bar to that case going forward. As to that, I would agree. And this is going to be important, potentially, even if you all were to prevail on personal jurisdiction, and we'll obviously have to see, but there isn't going to be a personal jurisdiction problem in Philadelphia. Would you agree with that? The bulk of our cases, I think five out of the seven were in Los Angeles. In fact, we tried to pursue a declaratory. So there's no way to bring a RICO conspiracy except bringing seven lawsuits for RICO conspiracies? No, Your Honor. One in California, one in Philadelphia, one in Dallas. They could certainly pursue their lawsuit in Texas, where the Simon-Greenstone defendants are at home, where their principal place of business is. But only there, in your view? They couldn't go to Philadelphia? I think that, and we have conceded that they could file in California. In fact, we pursued. Even for the RICO conspiracy where some of the predicate acts were Pennsylvania lawsuits and Texas lawsuits? In other words, is your theory of RICO personal jurisdiction a theory under which personal jurisdiction is okay as long as it would exist on a stand-alone basis for any of the predicate acts? I think the overwhelming weight of the cases would be in Los Angeles. That's where five of the seven cases were. Okay, but could you answer my question? RICO involves predicate acts. Yes. And I want to know whether, in general, in any kind of RICO case, if personal jurisdiction would be acceptable, looking at the predicate act as a stand-alone case, is personal jurisdiction okay for the whole RICO action, even though there are some number of additional predicate acts that wouldn't have gone forward there? We would concede that it would be in California and in Texas. For the whole conspiracy, they're asserting? Yes, you are. Okay, so Pennsylvania is fine, California is fine, even though that's not Simon Greenstone's principal place of business. Texas is easy because that's good there. Right, but perhaps I misspoke. Because five of the seven cases were in California, we think that would be the appropriate forum. That's more of a venue analysis, though. That's not personal jurisdiction. That just is a substantial part of the acts. It is in part, and it's also a forum nonconvenience argument as well. The forum nonconvenience is not jurisdictional either. Yes, and we would defer to Judge St. Eve's venue analysis, in her opinion, as to the RICO charges. Does the Court have any other questions for her? I guess I do, yeah. I understood your argument to be on Rooker-Feldman that, in fact, the jurisdiction might become available if John Crane were to go into the relevant state court proceedings, for example, and seek relief from those judgments, reopen them, so there's no longer a final judgment against them. Would that be correct? We believe that if they felt as strongly as they claim, that they should have pursued their claims in the forum courts. And once judgments are set aside, then you would have a ripe claim that would be subject to federal jurisdiction? Perhaps. I think these cases are time-barred. They're quite old. We think they are going to be barred by the four-year statute of limitations under RICO, which date back to the conduct rather than. And can I ask about the bankruptcy trust claims? I understand that's part of the payoff here, but is there any way in which those payments would have harmed John Crane? No, Your Honor, they would not. And John Crane makes a claim that it could have sought indemnity and contribution, but it never has. And in the Kellerman case where there was proof of multiple other actors being responsible for Mr. Kellerman's injuries, they're named in our motion to dismiss, Pittsburgh Corning, UNARCO, there were no claims for indemnity or contribution there. That's why that was never part of the original complaint in this case, and we believe that the claim of indemnity and contribution is really an afterthought to try to bootstrap around the Rooker-Feldman issue. And as to the three cases that were dismissed voluntarily, those were agreed upon orders to dismiss those cases, each party to bear his or its own costs. And we think that they're trying to revive those cases and get a better result, and so that's why we would argue that that would fall under Rooker-Feldman. Thank you, Your Honor. All right. Thank you very much. Anything further, Mr. Ferguson? Yes, Your Honor. Thank you. Just on Rooker-Feldman briefly, the doctrine is very narrow. It's designed to deal with cases that seek essentially to alter the judgment below, and we are not seeking that with respect to any of these cases. The Milstein, I hope I'm pronouncing that correctly, case that came down in the circuit last week uses this quote, the vital question is whether the federal plaintiff seeks the alteration of a state court's judgment, and we're not asking for that. I mean, some of your relief sounded like it was, but I certainly could imagine a district court pairing off the part of the case that didn't seem to fall within its jurisdiction. That's what I want to get to next, and that is that in addition to that, there is the reasonable opportunity doctrine or exception to the doctrine that applies when you don't have a reasonable opportunity to litigate the issue that's being brought in the federal case. And in this case, it is the secrecy provisions of these bankruptcy trusts that prevented John Crane from being able to even effectively use the state court process to test the assertions that were being given to them that there were no other exposures. So there was no reasonable opportunity in this case to even litigate this below. Your opponents say that that's not really true, that there were lists of the different places where these people worked, that this is a very repeat player oriented business, that in the shipyards and in the companies, everybody knew what kinds of products were there and who manufactured those products. Well, that is exactly the disadvantage to which John Crane was put, which is you had to use this circumstantial evidence to show potential other exposures, and in these jury trials the jury don't tend to buy those. When you've got an actual affidavit that is sitting in the drawer of the opposing counsel and is either held until after the case is over with or sometimes has been submitted to the bankruptcy trust and then withdrawn or remains in the bankruptcy trust, the lack of the ability to use state court process to obtain that is what prevented us from litigating this in a way that was fair and complete. And so I would submit that that's another reason why you really wouldn't carve all of this up, certainly not at the motion to dismiss stage. I would suggest that the district court should hear the evidence on that before deciding what would go in and out, if anything, on subject matter jurisdiction. And then the last thing I just wanted to address was the assertion that John Crane was the so-called sole link between the defendants in this case and Illinois. When you target someone with fraud in their home state and you receive the payment by making them rely on your false statements in their home state, that is not the same as the sole link cases where people say, well, the sole link is they had some communication. It's certainly not, as your Honor said. Well, it's not the same as doing a lot of things in Georgia to people who you know happen to be Nevada residents. That's right. But it's also not like when you commit malpractice in Michigan and happen to have a telephone call with a person in Illinois. That's the sole link also. But it's not a link that matters for jurisdictional purposes. Okay. Thank you. Thank you very much. Thanks to all counsel. We'll take the case under advisement.